# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **LENA SUTTON,** *on behalf of herself and those similarly situated,* | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **4:20-cv-00091-ACA** |
| | ] | |
| **LEESBURG, ALABAMA, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Lena Sutton lent her car to a friend who, unbeknownst to her, used it to carry drugs. After police officers from Defendant Town of Leesburg pulled her friend over and found the drugs, Leesburg seized Ms. Sutton's car and asked the State of Alabama to institute civil forfeiture proceedings under Alabama Code § 20-2-93. In accordance with that statute, Leesburg retained Ms. Sutton's car during the pendency of the civil forfeiture proceedings in state court, which took over a year to complete and ended in a judgment in Ms. Sutton's favor.

Near the end of the state civil forfeiture proceeding, Ms. Sutton filed this federal putative class action against Leesburg. She seeks damages and a declaratory judgment that Leesburg's pre-judgment retention of seized property without a probable cause hearing or other method for property owners to reclaim the property is unconstitutional. Ms. Sutton does not name the State as a defendant, but she

claims that Leesburg's practice of retaining property pre-judgment is part of a conspiracy with the State to violate the Fourth, Eighth, and Fourteenth Amendments.[1]

Because Ms. Sutton's lawsuit challenges the constitutionality of a state statute, the State intervened, under 28 U.S.C. § 2403(b), for the limited purpose of "argument on the question of constitutionality." The State has now moved to dismiss the complaint, contending that issue preclusion requires the court to abstain under the *Younger* abstention doctrine[2]; that even if issue preclusion does not apply, the court should exercise its discretion to abstain under *Younger*; that the court must dismiss the case because the State is a required and indispensable party under Federal Rule of Civil Procedure 19(b) but that its sovereign immunity prevents its joinder; that Alabama's doctrine of claim preclusion bars the case; and that Ms. Sutton fails to state a claim in any event. (Doc. 28).

Leesburg has separately filed a motion for judgment on the pleadings (doc. 31), making the same arguments as the State with respect to issue preclusion (doc. 32 at 6–13; doc. 37), and Ms. Sutton's ability to state a claim about the availability of a bond procedure (doc. 32 at 13–14). The court stayed briefing on Leesburg's

---

[1] Ms. Sutton's complaint makes one passing reference to the Fifth Amendment. (Doc. 1 at 14). Even if that were enough to assert a claim under the Fifth Amendment, her brief concedes that she cannot state a claim under the Fifth Amendment. (Doc. 34 at 25 n.3).

[2] *Younger v. Harris*, 401 U.S. 37 (1971).

motion in the interest of addressing the State's motion first.  (Doc. 33).  Now, having considered the State's motion, the court concludes that further briefing on Leesburg's motion is unnecessary because the resolution of the State's arguments applies equally to Leesburg's motion.

The court **GRANTS IN PART** and **DENIES IN PART** the State's motion to dismiss and Leesburg's motion for judgment on the pleadings.  The court finds that issue preclusion does not require it to abstain under *Younger* and that the court should not abstain because there is no possibility that this case will interfere with Ms. Sutton's state court forfeiture proceedings.  Furthermore, the State is not a required party, so a Rule 19(b) dismissal is unwarranted.  In addition, Alabama's doctrine of claim preclusion does not bar Ms. Sutton's claims because she was the prevailing defendant in the state court case.

On the merits, however, the court concludes that Ms. Sutton cannot state a claim under the Fourth or Eighth Amendments, and therefore **WILL DISMISS** those claims **WITH PREJUDICE**.  The court also **WILL DISMISS WITH PREJUDICE** the part of Ms. Sutton's Fourteenth Amendment claim asserting that either Leesburg or the statute fails to offer any method for forfeiture defendants to reclaim their property during the forfeiture proceedings, because the statute plainly provides for the execution of a bond in exchange for the property.  However, the court **DENIES** the motion to dismiss the Fourteenth Amendment claim with respect

to Ms. Sutton's challenge to the lack of a prompt post-seizure probable cause hearing because the State has not met its burden of making persuasive argument about why that claim must fail as a matter of law.

## I.   BACKGROUND

As an initial matter, the State asserts that dismissal is proper for lack of subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, under Rule 12(b)(6). (Doc. 28 at 3). The basis for the Rule 12(b)(1) motion is the State's contention that, under the *Younger* abstention doctrine, the court should decline to exercise jurisdiction over the case. (*See id.* at 10–14). The Eleventh Circuit has recently stated that the *Younger* abstention doctrine does not implicate the court's subject matter jurisdiction. *See Walker v. City of Calhoun*, 901 F.3d 1245, 1254 (11th Cir. 2018) ("*Younger* is based not on jurisdiction, but on the principles of equity and comity.") (quotation marks omitted); *see also Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) (noting that courts may resolve the threshold question of the applicability of the *Younger* doctrine "before addressing jurisdiction," therefore implying that the *Younger* doctrine does not operate as a jurisdictional bar); *Tokyo Gwinnett, LLC v. Gwinnett Cty.*, 940 F.3d 1254, 1266–67 (11th Cir. 2019) (using an abuse-of-discretion standard to review a district court's decision to abstain under *Younger*). The court will therefore proceed under only Rule 12(b)(6).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The court may also consider judicially noticed documents "for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999); *see also United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) (adopting *Bryant* outside the securities context). Alabama's motion to dismiss relies partly on state and federal court records from two previous cases involving the same facts presented by this case. (*See* Docs. 28-1, 28-2). The court takes judicial notice of these court records and will incorporate them into the description of the underlying facts.[3] *See* Fed. R. Evid. 201(b).

1. The Statute

Before delving into the facts underlying this case, the court must give an overview of the statute at issue in this case. Alabama's civil forfeiture statute provides for the civil forfeiture of vehicles used "to transport, or in any manner to

---

[3] The State also contends that the court may consider the judicial records because they are central to Ms. Sutton's claims and she has not challenged their authenticity. (Doc. 28 at 5). The court need not determine whether each of the documents is central to Ms. Sutton's claims (as opposed to the State's defenses) because the court will consider them as judicially noticed documents.

facilitate the transportation, sale, receipt, possession, or concealment of" controlled substances.  Ala. Code § 20-2-93(a)(5).  Police may seize property without a warrant incident to an arrest.  *Id.* § 20-2-93(b)(1).

In cases involving a warrantless arrest, a judge or magistrate must, within 48 hours of the arrest, determine "whether probable cause exists to believe that the defendant *committed the charged offense*."  Ala. R. Crim. P. 4.3(a)(iii) (emphasis added).  It is not clear what impact this determination might have on the retention of property seized incident to the arrest.

In cases of property seized "unlawfully," a person entitled to possession of the property may file, in the criminal case, a motion for return of the property.  Ala. R. Crim. P. 3.13(a).  This type of motion can succeed only if the movant proves that the seizure itself was illegal.  *State v. Greenetrack, Inc.*, 154 So. 3d 940, 953 (Ala. 2014).  And it ceases to be an option once the State or county district attorney, *see id.* § 20-2-93(h), *incorporating by reference id.* § 28-4-286, institutes a civil forfeiture proceeding, *see id.* § 20-2-93(d).

Once a civil forfeiture proceeding has begun, the property is "not . . . subject to replevin," Ala. Code § 20-2-93(d), a common law action for the return of goods wrongfully taken.  At that point, the only way a civil forfeiture defendant may obtain her property during the pendency of the proceeding is by "execut[ing] a bond in double the value of such property."  *Id.* § 20-2-93(h), *incorporating by reference id.*

§ 28-4-287; *State v. Two White Hook Wreckers*, __ So. 3d __, 2020 WL 7326386, at *2 (Ala. Dec. 11, 2020) (holding that the double-value bond "is the exclusive method by which a claimant may obtain seized personal property during the pendency of a forfeiture action").

To prevail in a civil forfeiture proceeding, the State must prove that the "act or omission [giving rise to forfeiture] was committed or omitted with the knowledge or consent of [the] owner or lienholder." Ala. Code § 20-2-93(h). The property owner may assert the affirmative defense that she is an innocent owner. *Id.* To succeed on that defense, the owner must prove that she had no knowledge of the act subjecting the property to forfeiture and "could not have obtained by the exercise of reasonable diligence knowledge of the intended illegal use of the property so as to have prevented such use." *Id.*

While the action is pending, the property is "deemed to be in the custody of the state, county, or municipal law enforcement agency." Ala. Code § 20-2-93(d). The entity having custody of personal property may put the property under seal, move the property "to a place designated by it," or move the property "to an appropriate location for disposition in accordance with law." *Id.* § 20-2-93(d)(1)– (3). If the State prevails in the forfeiture action, it may, among other options, sell the property. *Id.* § 20-2-93(e)(2). After paying for the cost of the proceedings, the State must award the remaining proceeds of the sale to "the municipal law

enforcement agency or department" that participated in the investigation resulting in the seizure. *Id.*

### 2. The Facts

On February 20, 2019, Ms. Sutton's friend, Roger Maze, borrowed her car to run an errand for her. (Doc. 1 at 5–6 ¶¶ 17–19; *see also id.* at 8 ¶ 25). As it turned out, Mr. Maze was a drug dealer and, after he was pulled over for speeding, the police searched the car and found methamphetamine. (*Id.* at 7 ¶¶ 20–21, 23). The police arrested Mr. Maze and his passenger and seized the car. (*Id.* at 8 ¶ 25).

Ms. Sutton quickly informed Leesburg that she had nothing to do with Mr. Maze's crime and that she needed her car back, but Leesburg requested that the State initiate a forfeiture action against her car. (Doc. 1 at 8–9 ¶¶ 29–35). The State filed the forfeiture action against Ms. Sutton on March 6, 2019, two weeks after her car was seized on February 20. (*Id.* at 10 ¶ 38; *see also* Doc. 28-1 at 4–6). The court will refer to the civil forfeiture action as *Sutton I.*

Although Ms. Sutton was served with the complaint in *Sutton I*, she did not appear in that case until May 1, 2019, the day the state court entered a default declaratory judgment forfeiting the car to Leesburg. (Doc. 28-1 at 18, 34, 45). She immediately moved to set aside the default, arguing in part that the lack of a timely post-seizure hearing to determine whether Ms. Sutton's car should be returned to her violated her constitutional rights. (*Id.* at 47, 108–18).

On the same day as the entry of default judgment and Ms. Sutton's motion to set aside the default in *Sutton I*, Ms. Sutton filed a federal lawsuit against Alabama's Attorney General, asserting that Alabama's civil forfeiture statute is unconstitutional and seeking injunctive relief and declaratory judgment. *Sutton v. Marshall*, no. 4:19-cv-00660-KOB, Doc. 1 (N.D. Ala. May 1, 2019). The court will refer to that federal case as *Sutton II*.

In June 2019, as *Sutton II* was getting underway, the state court in *Sutton I* set aside the default judgment and Ms. Sutton filed an answer. (Doc. 28-1 at 171–72). In July 2019, Ms. Sutton served interrogatories on the State. (*Id.* at 186). The State responded to the interrogatories later that month, providing no information but indicating that "[a] response . . . [would] be forthcoming." (*Id.* at 206–07). Nothing further happened in that case until February 2020, when the state court set the case for a trial to be held in April 2020. (*Id.* at 236).

In the meantime, in November 2019, the federal district court hearing *Sutton II* determined that, in light of the ongoing state court proceedings in *Sutton I*, the federal court should abstain under the *Younger* doctrine. *Sutton v. Marshall*, 423 F. Supp. 3d 1294 (N.D. Ala. 2019). It therefore dismissed *Sutton II* without prejudice. *Id.*

In January 2020, while the state court proceeding in *Sutton I* was still pending, Ms. Sutton filed this putative class action against Leesburg, seeking to certify a class

defined as "[a]ll persons who have had property seized by the Town of Leesburg, Alabama, and where a Civil Forfeiture Action was instituted by the State of Alabama beginning two (2) years before the filing of this action." (Doc. 1 at 11 ¶ 43). Proceeding under 42 U.S.C. § 1983, she asserts that Leesburg conspired with the State to violate (1) the Fourth and Fourteenth Amendment by retaining seized property before and during the pendency of civil forfeiture proceedings without holding a prompt post-deprivation hearing (*id.* at 14–16 ¶¶ 51–57, 18 ¶ 67); and (2) the Eighth Amendment by depriving property owners of their property during the pendency of the forfeiture proceedings (*id.* at 16 ¶¶ 59–60). In addition to a request for declaratory judgment, Ms. Sutton seeks compensatory and punitive damages. (*Id.* at 18–19).

In February 2020, the state court in *Sutton I* set an April 2020 trial date. (Doc. 28-1 at 236). Before the trial, Ms. Sutton moved for summary judgment on the ground that the State had no evidence she was involved in or even knew about Mr. Maze's illegal activity. (*Id.* at 238–44). In May 2020, the state court granted summary judgment in Ms. Sutton's favor and denied the State's request for forfeiture of the car (*id.* at 386).

Returning to this case, in October 2020, Ms. Sutton filed a belated notice under Federal Rule of Civil Procedure 5.1 and 28 U.S.C. § 2403 that this action questions the constitutionality of a state statute. (Doc. 24). After the court certified

to the Attorney General that this action raises a constitutional challenge to the civil forfeiture statute, the State, without waiving its sovereign immunity, moved to intervene for the limited purpose of filing a motion to dismiss.  (Doc. 26).  This court granted the motion and the State filed the instant motion to dismiss.  (Docs. 27, 28). Leesburg soon followed with its motion for judgment on the pleadings.  (Doc. 31).

## II.    DISCUSSION

The State moves to dismiss this case, contending that: (1) the federal doctrine of issue preclusion mandates that this court abstain under the *Younger* doctrine because the *Sutton II* court abstained; (2) even if issue preclusion does not apply, the court should abstain; (3) under Rule 19(b), it is an indispensable party that cannot be joined due to its sovereign immunity from suit; (4) Alabama's doctrine of claim preclusion bars this case; and (5) Ms. Sutton fails to state a claim.   (Doc. 28). Leesburg joins in the State's arguments about the applicability of issue preclusion to the *Sutton II* court's abstention, as well as its argument about the part of Ms. Sutton's claim alleging that the statute does not provide for a bond procedure.  (Docs. 32, 37).

Before the court addresses those arguments, it must clarify two things about Ms. Sutton's complaint.  First, Ms. Sutton requests a declaratory judgment that the civil forfeiture statute violates the "Fourth Amendment and Due Process Clauses of the Fourteenth Amendment" by: (1) "failing to provide adequate and prompt post-deprivation deprivation [sic] hearings to individuals whose property has been seized

and retained"; and (2) "retaining all seized property and without a prompt post-seizure hearing." (Doc. at 17–18). These requests are somewhat difficult to parse.

However, a careful reading of the complaint in conjunction with Ms. Sutton's other filings in this case reveals that the first request relates to the lack of a post-seizure hearing about whether there is probable cause to believe the property is subject to forfeiture. (*See* Doc. 1 at 14 ¶¶ 51–52; Doc. 22 at 2 ¶ 5). The second request relates to a civil forfeiture defendant's alleged inability to retrieve her property while the forfeiture action is pending. (*See* Doc. 1 at 15 ¶ 55, 18 ¶ 68; Doc. 22 at 2 ¶ 5).

Second, Ms. Sutton's brief in opposition to the motion to dismiss makes references to requests for injunctive relief against the State. (*See* Doc. 24 at 24). Ms. Sutton's complaint does not actually make any request for injunctive relief, instead requesting only declaratory judgment and damages from Leesburg. (*See* Doc. 1 at 18–19). Ms. Sutton cannot add a request for injunctive relief or name a new defendant via briefing in opposition to a motion to dismiss. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). Accordingly, the court will not address any requests for injunctive relief raised in briefing, but instead only the requests for relief actually made in Ms. Sutton's complaint.

With that understanding of Ms. Sutton's complaint, the court turns to the State's arguments in support of dismissal.

1.  *Younger* Abstention

First, the State contends that under the *Younger* abstention doctrine, this court should abstain because (1) the *Sutton II* court abstained, thereby binding this court under the doctrine of issue preclusion; and (2) although the state court proceedings in *Sutton I* have now ended, they were still ongoing when Ms. Sutton filed this case. (Doc. 28 at 10–14).

"Under *Younger v. Harris* and its progeny, federal district courts must refrain from enjoining pending state court proceedings except under special circumstances." *Old Republic Union Ins. Co. v. Tillis Trucking Co.*, 124 F.3d 1258, 1261 (11th Cir. 1997). "By abstaining from exercise of their jurisdiction, the federal courts promote the value of comity between the states and the federal government and avoid unnecessary determinations of federal constitutional questions." *Liedel v. Juvenile Court of Madison Cty.*, 891 F.2d 1542, 1546 (11th Cir. 1990). But abstention is the exception to the general rule that federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them." *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (quoting *Col. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) (quotation marks and alteration omitted).

The *Younger* doctrine originally applied only to federal cases seeking to enjoin state criminal proceedings, but it has been extended to apply to federal cases seeking any form of relief that would "effectively" enjoin certain state court civil

proceedings. *Republic Union Ins. Co.*, 124 F.3d at 1261. Where state court civil proceedings are at issue, a court must consider whether (1) the federal proceeding would interfere with the ongoing state judicial proceeding; (2) the state proceeding implicates important state interests; and (3) the plaintiff has an adequate state remedy available. *31 Foster Children*, 329 F.3d at 1274–75. The Eleventh Circuit has explained that a state court proceeding is considered "ongoing" if it was pending at the time the plaintiff filed the federal complaint. *Liedel*, 891 F.2d at 1546 n.6. But the court must decide whether to abstain based on the circumstances present at the time of the decision. *See Redner v. Citrus Cty.*, 919 F.2d 646, 649 n.5 (11th Cir. 1990).

### a. Issue Preclusion

As an initial matter, the State contends that this court need not engage in any analysis of whether to abstain under *Younger* because the *Sutton II* court's decision to abstain binds the court under the doctrine of issue preclusion. (Doc. 28 at 12–13). Because the State seeks to use a federal decision based on a federal question to issue-preclusive effect, this court must apply federal preclusion principles. *CSX Transp., Inc. v. Bhd. of Maint. of Way Employees*, 327 F.3d 1309, 1316 (11th Cir. 2003).

Under Eleventh Circuit law, issue preclusion prohibits a party from relitigating an issue if four criteria are met: (1) "the issue at stake is identical to the one involved in the prior proceeding"; (2) "the issue was actually litigated in the

prior proceeding"; (3) the determination of the issue in the prior litigation was a "critical and necessary part of the judgment"; and (4) "the party against whom [issue preclusion] is asserted . . . had a full and fair opportunity to litigate the issue in the prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998) (quotation marks omitted).   Where circumstances have materially changed, issue preclusion does not apply.  *CSX Transp., Inc.*, 327 F.3d at 1317–18.

Here, it is unclear that the district court's discretionary decision not to exercise jurisdiction in *Sutton II* resulted in the type of judgment that would have preclusive effect.  But even assuming for the sake of simplicity that it did, the application of issue preclusion is not appropriate in this case because the *Younger* issue presented in *Sutton II* is not identical to the *Younger* issue presented in this case and the circumstances have materially changed.

For one thing, although the underlying facts in this case and *Sutton II* are identical up to a point, the analysis of whether *Younger* requires abstention is not. In *Sutton II*, Ms. Sutton expressly sought various forms of injunctive relief against Alabama's Attorney General, including a court order requiring the State and local law enforcement agents to "institute hearings" in all cases involving the forfeiture of property and a preliminary injunction prohibiting the allegedly unconstitutional "practices" complained of in these cases.  *Sutton II*, no. 4:19-cv-00660-KOB, Doc.

14 at 17–18 (N.D. Ala. June 28, 2019).  She also requested a declaratory judgment, but no money damages.  *Id.*

By contrast, in this case, Ms. Sutton seeks money damages and a declaratory judgment, but no injunctive relief.  (Doc. 1 at 18–19).  Because an integral part of the *Younger* analysis involves whether the relief sought in the federal case will interfere with ongoing state court proceedings, the issue presented in *Sutton II* and this case is not identical.  *Cf. CSX Transp. Inc.*, 327 F.3d at 1317 ("If we were bound by broad legal decisions by other courts at a given level of abstraction out of the facts of every similar case by the mere fact of an identical caption, the novel defense of issue preclusion would serve to bind the adjudication of many more cases than would serve the interests of justice and move outside the scope of the purposes of [issue preclusion].").

Even if the issues were identical, only "one material differentiating fact that would alter the legal inquiry" is required to "overcome the preclusive effect" of an earlier judgment.  *CSX Transp., Inc.*, 327 F.3d at 1317.  When the *Sutton II* court made its decision, the state court proceedings in *Sutton I* were still pending.  Now *Sutton I* has ended in Ms. Sutton's favor.  This change is material because the potential for the federal court judgment to interfere with the state court proceedings is of paramount importance in the *Younger* analysis.  *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) ("*Younger v. Harri*s . . .

and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."); *31 Foster Children*, 329 F.3d at 1276 ("[A]n essential part of the . . . *Younger* abstention analysis is whether the federal proceeding will interfere with an ongoing state court proceeding.   If there is no interference, then abstention is not required."). Accordingly, issue preclusion does not require this court to abstain under the *Younger* doctrine, and the court must undertake its own analysis about whether to abstain.

### b. *Whether to Abstain*

A court considering whether to abstain must determine whether (1) the federal proceeding would interfere with the ongoing state judicial proceeding; (2) the state proceeding implicates important state interests; and (3) the plaintiff has an adequate state remedy available.  *31 Foster Children*, 329 F.3d at 1274–75.  There is no dispute that the state civil forfeiture action in *Sutton I* is a state court civil proceeding that involves important state interests.  There is also no dispute that *Sutton I* was still ongoing when Ms. Sutton filed this case, meaning that for purposes of the *Younger* analysis, the court must consider *Sutton I* to be an ongoing state court proceeding.[4] *See Liedel*, 891 F.2d at 1546 n.6.

---

[4] The court notes, however, that in *Liedel*, the federal district court abstained ten days *before* the state court hearing the plaintiffs sought to enjoin.  891 F.2d at 1544.  The only order the district court entered *after* the state court hearing was a denial of a motion to alter or amend, which the district court issued during the period when the plaintiffs could still appeal the state court's

However, the Eleventh Circuit has clearly instructed that a proceeding's ongoing nature is not enough to justify *Younger* abstention if the federal court's decision will not interfere with the proceeding. *31 Foster Children*, 329 F.3d at 1275. And here, there is no possibility that this case could interfere with *Sutton I* because *Sutton I* has ended with a final judgment in Ms. Sutton's favor that the State has not appealed. Even if Ms. Sutton were to prevail in this case and win both money damages and a declaratory judgment, the federal judgment would have no effect on the *Sutton I* proceeding or judgment.

Moreover, it is unclear that the declaratory relief sought in this case would effectively enjoin civil forfeiture proceedings. As discussed above, Ms. Sutton seeks a declaratory judgment about the unconstitutionality of the lack of (1) a prompt post-seizure probable cause hearing and (2) a method for civil forfeiture defendants to retrieve the property at issue during the forfeiture proceedings. In effect, she wants a declaration that the State and Leesburg cannot hold onto the property during the forfeiture proceedings unless they have shown probable cause and provided some pre-judgment method for forfeiture defendants to obtain their property.

---

order. *Id.* at 1545. And the plaintiffs were still seeking to enjoin the future enforcement of orders or the future issuance of orders relating to the state court proceeding. *Id.* at 1544; *see also The News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1506, 1510 (11th Cir. 1991) (affirming the district court's decision to abstain because the state court had before it a motion for reconsideration before it when the federal court abstained). Thus, the underlying state court proceeding had not concluded when the federal district court abstained.

Putting aside the merit of Ms. Sutton's claims, the State has not persuaded this court that the declaratory judgment Ms. Sutton seeks would effectively enjoin any forfeiture proceedings. *See Fuentes v. Shevin*, 407 U.S. 67 72 n.3 (1972) (noting that *Younger* did not bar an action seeking declaratory and injunctive relief against the enforcement of a state's prejudgment replevin statute because the lawsuit "challenged only the summary extra-judicial process of prejudgment seizure of property to which [the plaintiffs] had already been subjected"); *Gerstein v. Pugh*, 420 U.S. 103, 107–08 & 108 n.9 (1975) (holding that *Younger* abstention was not required where the plaintiff in a class action sought an injunction requiring pretrial probable cause hearings before a prosecutor could order the detention of criminal defendants); *see also Walker*, 901 F.3d at 1254 (holding that *Younger* did not apply where a plaintiff filed a class action seeking prompt bail determinations, because requiring such a pretrial bail determination would not interfere with a subsequent prosecution and the relief requested did not ask for "pervasive federal court supervision" of the ongoing state proceedings). But in any event, the court does not need to engage in that analysis at this point because, as discussed above, there is no possibility that this case could interfere with Ms. Sutton's forfeiture proceedings. The court therefore declines to abstain under *Younger*.

## 2. Rule 19

Next, the State asserts that it is a required and indispensable party under Rule 19, but it cannot be joined to the suit because of its sovereign immunity, requiring dismissal of the case. (Doc. 28 at 14–21). It emphasizes that although it intervened in this case, it did so for the limited purpose of defending the constitutionality of § 20-2-93, and that intervening under 28 U.S.C. § 2403 does not subject it to liability. (*Id.* at 14–15; Doc. 26).

Federal Rule of Civil Procedure 19 sets out the standard for determining whether a party who has not been named in a case is nevertheless a "required party" and, if it is, whether its absence from the case mandates dismissal. Fed. R. Civ. P. 12; *Fla. Wildlife Fed'n Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1316 (11th Cir. 2017). Joinder of a party is required if (1) the party is subject to service of process; (2) joinder will not deprive the court of subject matter jurisdiction; and (3) the party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1). "[P]ragmatic concerns, especially the effect on the parties and the litigation, control this analysis." *Fla. Wildlife Fed'n, Inc. v. U.S. Army Corps of Eng'rs*, 859 F.3d 1306, 1316 (11th Cir. 2017) (quotation marks omitted). If a required party cannot be joined in the action, "the court must determine whether, in

equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).

The State first argues that it is a required party because Ms. Sutton alleges that Leesburg conspired with the State.  (Doc. 28 at 15–16).  But it points to no precedent holding that a plaintiff must name as a defendant every participant in an alleged conspiracy, and this court has found no such precedent.

The State next argues that because this lawsuit challenges the constitutionality of a state statute and the State has an interest in defending the constitutionality of its statutes, it is a required party.  (Doc. 28 at 16–17).  The court agrees that the State "claims an interest relating to the subject of the action," but concludes that it is not "so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest."  Fed. R. Civ. P. 19(a)(1).

As the Second Circuit has explained, "[s]tate (and federal) statutes are frequently challenged as unconstitutional without the state (or federal) government as a named party."  *Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 359 (2d Cir. 2015).  Section 2403(b), which permits the State to intervene without subjecting it to liability, "contemplates such suits by providing a notice mechanism and relaxed intervention rules for an absent sovereign in cases challenging the validity of its laws."  *Id.*  Here, the State has taken advantage of the

opportunity offered by § 2403(b) to intervene, without waiving its sovereign immunity, in order to defend its interest in the case.  As a practical matter, its nonjoinder does not "impair or impede [its] ability to protect [its] interest."  Fed. R. Civ. P. 19(a)(1).

The Eleventh Circuit's decision in *Florida Wildlife Federation, Inc.*, is not to the contrary.  In that case, the plaintiff challenged a federal agency's management of a state waterway as violating a federal statute through its violations of state law.  *Fla. Wildlife Fed'n, Inc.*, 859 F.3d at 1308.  A state agency moved to intervene so that it could file a motion to dismiss.  *Id.* at 1314.  The district court denied the motion to intervene and ultimately dismissed the case on a different ground.  *Id.* at 1315.  The Eleventh Circuit held that the district court should have dismissed the action for failure to join the state agency, which was an indispensable party.  *Id.* at 1316.  The Court did not discuss § 2403(b)'s effect on the Rule 19 analysis, likely because that case did not involve a challenge to the constitutionality of a state statute.  *See* 28 U.S.C. § 2403(b) (permitting the State to intervene in "any action, suit, or proceeding . . . wherein the constitutionality of any statute of that State affecting the public interest is drawn in question").

Unlike *Florida Wildlife Federation, Inc.*, the State in this case has the statutory right to intervene to defend its interest, and it has taken advantage of that right.  The practical reality is that the State is well situated to protect its interest in

defending its civil forfeiture statute.  Joinder as a party is unnecessary and the court will not dismiss this action under Rule 19.

### 3.  Claim Preclusion

Next, the State contends that Ms. Sutton's constitutional claims are barred by Alabama's doctrine of claim preclusion because she either raised them or could have raised them during the civil forfeiture proceedings in *Sutton I*.  (Doc. 28 at 24–26). Leesburg purports to join in the State's motion to dismiss on this ground (doc. 37), although its brief in support of the joinder addresses only the separate defense of issue preclusion (doc. 38).

The court must apply Alabama law to determine the preclusive effect of an Alabama state court judgment.  *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006).  Under Alabama law, claim preclusion is an affirmative defense which the party asserting it must prove.  *Bond v. McLaughlin*, 229 So. 3d 760, 767 (Ala. 2017).  Claim preclusion bars "any claim that was, or that could have been, adjudicated in [a] prior action" where there is "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions."  *Ex parte Beck*, 988 So. 2d 950, 954 (Ala. 2007) (quotation marks omitted).

Ms. Sutton argues that claim preclusion cannot bar her lawsuit because she was the prevailing defendant in *Sutton I*.  (Doc. 34 at 22–24).  She is correct.  The

Alabama Supreme Court has explained that, with two exceptions, claim preclusion will not bar a successful defendant in an action from filing a later action bringing her own claims based on the same facts:

> As a general rule, where a defendant has an independent claim against the plaintiff, such as might be either the basis of a separate action or might be pleaded as a set-off or counterclaim, he is not obliged to plead it in plaintiff's action, although he is at liberty to do so, and if he omits to set it up in that action, or if, although he introduces it in evidence in rebuttal of plaintiff's demand, it is not used as a set-off or counterclaim, this will not preclude him from afterward suing plaintiff upon it, in the absence of some statute to the contrary. But the rule does not apply where the subject matter of the set-off or counterclaim was involved in the determination of the issue in the former action in such wise that the judgment therein necessarily negatives the facts on which defendant would have to rely in order to establish his demand

*Maxcy v. Twilley*, 271 So. 2d 243, 244 (1972) (citing *A.B.C. Truck Lines v. Kenemer*, 25 So. 2d 511 (Ala. 1946)). In short, under *Maxcy* and *Kenemer*, claim preclusion does not bar a prevailing defendant from filing her own claims against the losing plaintiff unless (1) a statute specifically bars the assertion of the claim in a later action or (2) the judgment in the earlier action establishes a fact that would necessarily defeat the claim.[5]

---

[5] Alabama law also provides that "failure to assert a compulsory counterclaim bars the assertion of that claim in another action." *Brooks v. Peoples Nat. Bank of Huntsville*, 414 So. 2d 917, 920 (Ala. 1982); Ala. R. Civ. P. 13(a). This rule derives from the doctrines of claim and issue preclusion. *See* Ala. R. Civ. P. 13(a), committee comments. Rule 13 carves out several exceptions, including what appears to be an exception for a prevailing defendant. *See* Ala. R. Civ. P. 13(a) ("[R]elitigation of [an unasserted compulsory counterclaim] may be barred by the doctrines of [claim preclusion] or [issue preclusion] by judgment *in the event certain issues are determined adversely to the party electing not to assert the claim*.") (emphasis added). In any

The State does not address the rule set out in *Kenemer* and *Maxcy*, arguing that Alabama's law on claim preclusion does not make an exception for prevailing defendants.  (*See* Doc. 28 at 24–26; Doc. 35 at 7–8).  It points to a later Alabama Supreme Court case in which a prevailing *plaintiff* was barred from bringing later claims against the same defendant.  *Old Republic Ins. Co. v. Lanier*, 790 So. 2d 922, 927–30 (Ala. 2000).  *Old Republic Insurance Company* is entirely consistent with *Kenemer* and *Maxcy*, and does not establish that Alabama courts have dispensed with the "prevailing defendant" exception.  *See also Burdeshaw v. White*, 585 So. 2d 842, 844 (Ala. 1991) ("The traditional [claim preclusion] case . . . involves prior litigation between a plaintiff and a defendant, which is decided on the merits by a court of competent jurisdiction, and then a subsequent attempt by the prior plaintiff to relitigate the same cause of action against the same defendant, or perhaps to relitigate a different claim not previously litigated but which arises out of the same evidence. . . .  If the plaintiff won, the claim is merged into the judgment; if the defendant won, the *plaintiff* is barred from relitigating any matter which could have been litigated in the prior action.") (quotation marks omitted) (emphasis added).

Because the State does not acknowledge the "prevailing defendant" exception, it also does not argue that Ms. Sutton's claims are barred by a statute or

---

event, the State has not argued that Ms. Sutton's current claims are barred under Rule 13 as unasserted compulsory counterclaims, and it has therefore waived that argument.

that the judgment in *Sutton I* establishes a fact that would necessarily defeat Ms. Sutton's current claims. The State has therefore failed to carry its burden of showing that it is entitled to the affirmative defense of claim preclusion.

### 4. Claim Splitting

In a footnote, the State makes a passing argument that the court must dismiss this case under the claim splitting doctrine. (Doc. 28 at 26 n.9). The court disagrees.

The claim splitting doctrine prohibits a plaintiff from filing multiple lawsuits against a defendant at the same time in the same court. *See Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017) ("[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time.") (quoting *Curtis v. Citibank N.A.*, 226 F.3d 133, 139 (2d Cir. 2000)). The prohibition against claim splitting "derives from the doctrine of [claim preclusion]," *id.* at 840 n.3, but "claim splitting is more concerned with the district court's comprehensive management of its docket," *id.* at 841. The decision to dismiss for improper claim splitting is a discretionary one. *Id.* at 837.

Although Ms. Sutton has been involved in multiple lawsuits relating to the same nucleus of operative fact, she has not engaged in impermissible claim splitting. As an initial matter, it is not clear that a pending state court case can support the dismissal of a federal case for claim splitting. *See, e.g.*, *Kanciper v. Suffolk Cty. Soc. for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 92 (2d Cir. 2013) (finding

that the district court abused its discretion by dismissing a case for claim splitting based on the existence of a state court case involving the same subject matter jurisdiction).  But even if a state case could be the basis for a claim-splitting dismissal, *Sutton I* cannot be because Ms. Sutton was not the plaintiff in that case. *See Vanover*, 857 F.3d at 841.  And *Sutton II* cannot be the basis for dismissal because Ms. Sutton did not file this case until after the court dismissed *Sutton II* without prejudice, so the two federal cases were never pending at the same time. *See id.*  The court will not dismiss the case for claim splitting.

5.  Merits

Ms. Sutton challenges the enforcement of the civil forfeiture statute under the Fourth, Eighth, and Fourteenth Amendments, arguing that Leesburg and the State's established procedure does not provide for a post-seizure probable cause hearing or a method for forfeiture defendants to obtain their property during the pendency of the forfeiture proceedings.  The State contends that Ms. Sutton does not state a claim because (1) the Fourth Amendment does not apply to civil forfeiture actions; (2) Ms. Sutton received due process under the Fourteenth Amendment; and (3) Ms. Sutton was not fined in violation of the Eighth Amendment.  (Doc. 28 at 26).

As an initial matter, to the extent Ms. Sutton challenges the purported lack of a method by which forfeiture defendants can obtain their property during the pendency of the civil forfeiture proceeding, her claim must fail.  As the court set out

above, and as the *Sutton II* court clearly explained in its decision, *see Sutton*, 423 F. Supp. 3d at 1298, the civil forfeiture statute provides a method for property owners to reclaim their property by executing a double-value bond, Ala. Code § 20-2-93(h), *incorporating by reference id.* § 28-4-287; *Two White Hook Wreckers*, __ So. 3d at __, 2020 WL 7326386, at *2.  Ms. Sutton does not argue that requiring payment of a bond that is twice the value of the property is unconstitutional; she argues that no such option exists at all.  (*See* Doc. 1 at 10 ¶ 41, 15 ¶ 55, 16 ¶ 57; *see also* Doc. 34 at 4 (arguing that she had "no avenue to retrieve her vehicle" during the pendency of the civil forfeiture proceedings)).  Because it is clear from the face of the statute that executing a double-value bond is a method by which forfeiture defendants may reclaim property during the forfeiture proceedings, the court **WILL GRANT** the State's motion to dismiss and Leesburg's motion for judgment on the pleadings with respect to that claim.  The court **WILL DISMISS** that claim **WITH PREJUDICE**.

The rest of the court's opinion will address only Ms. Sutton's other theory—that the lack of a prompt post-seizure probable cause hearing violates the Constitution.

### i.    Fourth Amendment

Ms. Sutton claims that Leesburg's "policy and practice" of not providing a probable cause hearing violates the Fourth Amendment.  (Doc. 1 at 18–19).  The

State contends that Ms. Sutton does not state a claim under the Fourth Amendment because the Fourth Amendment governs only the initial seizure and not the retention of the property.  (Doc. 28 at 27–28).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV.  A plaintiff may state a Fourth Amendment claim for an unreasonable seizure of property and possibly even for retention of unconstitutionally seized property.  *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009); *Bruce v. Beary*, 498 F.3d 1232, 1248 (11th Cir. 2007) (stating that "the continued retention of" property seized pursuant to an unlawful search "would be a constitutional violation as well"); *Barker v. Norman*, 651 F.2d 1107, 1131 (5th Cir. Unit A July 30, 1981) ("[C]ontinued retention by police officers of allegedly stolen property, as distinct from the initial seizure of that property, may in some circumstances be a constitutional deprivation.").  But a plaintiff cannot state a Fourth Amendment claim based on the continued retention of legally seized property; instead, such a claim "raises an issue of procedural due process under the Fourteenth Amendment."  *Case*, 555 F.3d at 1330.

Ms. Sutton expressly does not challenge the constitutionality of the initial seizure of her car.  (Doc. 1 at 3 ¶ 7; *see also* Doc. 34 at 26).  Her challenge to the

retention of her car therefore cannot implicate the Fourth Amendment.  *See Case*, 555 F.3d at 1327; *Byrd v. Stewart*, 811 F.2d 554, 554–55 (11th Cir. 1987) (stating that a challenge to the retention of property is properly brought as a procedural due process claim).   Accordingly, Ms. Sutton cannot state a claim under the Fourth Amendment.   The court **WILL GRANT** the motion to dismiss Ms. Sutton's Fourth Amendment claim and **WILL DISMISS** that claim **WITH PREJUDICE**.

ii.     *Fourteenth Amendment Due Process*

Ms. Sutton claims that the lack of a prompt post-seizure hearing to determine whether there is probable cause to believe the property is subject to forfeiture violates the Fourteenth Amendment's Due Process Clause.  (Doc. 1 at 18–19).  The State contends that this does not state a due process claim because Ms. Sutton's forfeiture proceedings satisfied the requirements for a speedy trial, as required by *Barker v. Wingo*, 407 U.S. 514 (1972), and any delay in the resolution of the merits of the forfeiture action was due to Ms. Sutton's own actions. (Doc. 28 at 29–33). Ms. Sutton responds that she is not challenging how long it took to reach a final judgment in the forfeiture proceedings, but instead the pre-judgment deprivation of her property without a probable cause determination.  (Doc. 34 at 27–30).  She argues that the court must conduct the due process balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  (*Id.*).

The State's reliance on *Barker* is misplaced.  Ms. Sutton does not argue that she was deprived of a speedy forfeiture proceeding.  (*See* Doc. 1 at 18–19 (requesting declaratory judgment that the lack of a post-seizure hearing is unconstitutional); Doc. 34 at 27).  Because she challenges the post-seizure retention of property, her claim is one for a violation of her right to procedural due process.  *See also Case*, 555 F.3d at 1330 ("A complaint of continued retention of legally seized property raises an issue of procedural due process under the Fourteenth Amendment"); *Byrd*, 811 F.2d at 554–55.

A plaintiff asserting a procedural due process claim must show (1) "a deprivation of a constitutionally-protected liberty or property interest"; (2) state action; and (3) constitutionally inadequate process.  *Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1236 (11th Cir. 2003).  Under *Mathews v. Eldridge*, a court evaluating whether a plaintiff received due process must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the governmental "interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335.

The State's brief and cursory argument about the *Mathews* test (doc. 35 at 10–11) is insufficient to carry its burden of showing that Ms. Sutton's claim fails as a matter of law.  The court emphasizes that this ruling does not mean that Ms. Sutton states a claim, but merely that the State's motion is inadequate to support dismissal.  Accordingly, the court **DENIES** the motion to dismiss the Fourteenth Amendment claim to the extent it challenges the lack of a prompt post-seizure hearing about whether probable cause exists to believe that the property is subject to forfeiture.

### iii.    *Eighth Amendment Excessive Fines Clause*

Ms. Sutton claims that the retention of her car while the civil forfeiture proceedings were ongoing was an excessive fine, in violation of the Eighth Amendment, and that she can recover damages from Leesburg because it engaged in a conspiracy with the State to violate that Amendment.  (Doc. 1 at 16 ¶ 59, 19 ¶ 3).  The State contends that this claim fails because a "fine" under the Eighth Amendment occurs only if the property is forfeited, but Ms. Sutton's car was not forfeited.  (Doc. 28 at 33–34).

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The Excessive Fines Clause is applicable to the States through the Fourteenth Amendment.  *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019).  It is axiomatic that an excessive fine claim requires the plaintiff to establish the existence

of both "(1) a fine and (2) excessive[ness]."  *United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1309 (11th Cir. 1999).  The only question before the court on this claim is whether Ms. Sutton was "fined" when Leesburg retained her car before the entry of judgment in the civil forfeiture proceeding.  (*See* Doc. 28 at 33–34).  Ms. Sutton contends that even a temporary deprivation of the car constitutes a "fine" for Eighth Amendment purposes.  (Doc. 34 at 34–35).

The State has the better argument.  Civil *in rem* forfeitures are considered "fines" under the Eighth Amendment "when they are at least partially punitive." *Timbs*, 139 S. Ct. at 689; *see also United States v. Browne*, 505 F.3d 1229, 1281 (11th Cir. 2007) ("Forfeitures are subject to the Eighth Amendment's prohibition against excessive fines if they constitute punishment for an offense.") (quotation marks omitted).  But Ms. Sutton does not cite to any cases finding that a pre-judgment retention of property constitutes a "fine" where the property is not ultimately forfeited, and this court has been unable to locate any decision holding that retention of property during a civil proceeding—even a civil forfeiture proceeding—can be considered a "fine."

This makes sense.  "[A]t the time the Constitution was adopted, the word 'fine' was understood to mean a *payment* to a sovereign as punishment for some offense."  *United States v. Bajakajian*, 524 U.S. 321, 327 (1998) (emphasis added). Forfeitures are "payments in kind."  *Id.* at 328; *see also Austin v. United States*, 509

U.S. 602, 609–10 (1993) ("The Excessive Fines Clause limits the government's power to *extract payments*, whether in cash or in kind, as punishment for some offense.") (emphasis added).   But the pre-judgment retention of property is not payment, even in kind, because ownership of the property does not change until after the entry of a judgment.

Although Ms. Sutton did not have access to her property while Leesburg held it, the property still belonged to her.   Neither the State nor Leesburg has the power to use or sell seized property until after it is forfeited.   *See* Ala. Code § 20-2-93(d) (permitting the entity holding the property pre-forfeiture to place the property under seal, remove the property to a specific place, and in the case of real property, to post a notice and record the seizure), *id.* § 20-2-93(e) (permitting the State, county, or municipality to use or sell property only after the property has been forfeited).   All they can do is hold the property until a judgment has issued.

Leesburg's pre-judgment retention of Ms. Sutton's car cannot be considered a "fine" as that word is used in the Eighth Amendment's Excessive Fines Clause. Accordingly, the court **GRANTS** the motion to dismiss and **WILL DISMISS** Ms. Sutton's excessive fine claim **WITH PREJUDICE**.

### III.   CONCLUSION

The court **GRANTS IN PART** and **DENIES IN PART** the State's motion to dismiss the amended complaint and Leesburg's motion for judgment on the

pleadings.  The court **WILL DISMISS** Ms. Sutton's Fourth and Eighth Amendment claims **WITH PREJUDICE**.  The court also **WILL DISMISS** Ms. Sutton's claim that Leesburg or § 20-2-93 fails to provide a method by which a forfeiture defendant may reclaim property during the pendency of the forfeiture proceeding.  But the court **DENIES** the motions with respect to Ms. Sutton's Fourteenth Amendment claim arising from the lack of a prompt post-seizure hearing about whether there is probable cause to believe the property is subject to forfeiture.

The court will enter a partial judgment consistent with this memorandum opinion and order.

**DONE** and **ORDERED** this April 6, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE