FILED
2021 Sep-13  PM 01:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **LENA SUTTON,** *on behalf of herself and those similarly situated,* | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **4:20-cv-00091-ACA** |
| | ] | |
| **LEESBURG, ALABAMA, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Lena Sutton lent her car to a friend who, unbeknownst to her, used it to carry drugs.  After police officers from Defendant Town of Leesburg pulled her friend over and found the drugs, Leesburg seized Ms. Sutton's car and asked the State of Alabama to institute civil forfeiture proceedings under Alabama Code § 20-2-93.  In accordance with that statute, Leesburg retained Ms. Sutton's car during the pendency of the civil forfeiture proceedings in state court, which took over a year to complete and ended in a judgment in Ms. Sutton's favor.

Ms. Sutton filed this federal putative class action against Leesburg.  (Doc. 1).  The State of Alabama intervened, under 28 U.S.C. § 2403(b), for the limited purpose of "argument on the question of constitutionality."  The court has dismissed all of Ms. Sutton's claims except her procedural due process claim, in which she argues that the Fourteenth Amendment to the United States Constitution requires the

provision of a post-seizure, pre-judgment hearing on whether there is probable cause to support the retention of property during the pendency of the forfeiture proceeding. (Doc. 40).

Before the court now are cross-motions for summary judgment filed by Ms. Sutton, Leesburg, and the State.  Ms. Sutton seeks summary judgment in her favor only as to liability (doc. 22), and Leesburg and the State seek summary judgment in their favor (docs. 46, 50).  Under the *Barker v. Wingo*, 407 U.S. 514 (1972) test for whether a defendant received a speedy trial, no reasonable jury could find in Ms. Sutton's favor.  Accordingly, the court **WILL DENY** her motion for summary judgment and **WILL GRANT** Leesburg's and the State's motions for summary judgment.

## I.    BACKGROUND

On cross-motions for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to [each] non-moving party." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1239 (11th Cir. 2018) (quotation marks omitted).  In this case, no one disputes the material facts.

The evidence establishes that on February 21, 2019, Ms. Sutton's friend, Roger Maze, borrowed her car to run an errand for her.  (Doc. 21-1 at 2 ¶ 1).  After he was pulled over for speeding, the police searched the car and found

methamphetamine.   (Doc. 23 at 4 ¶¶ 5–6; Doc. 48 at 3).   The police arrested Mr. Maze and his passenger and seized the car.  (Doc. 23 at 5 ¶ 7, 5 ¶ 10; Doc. 48 at 3).

Ms. Sutton quickly informed Leesburg that she had nothing to do with Mr. Maze's crime and that she needed her car back.  (Doc. 21-1 at 2–3 ¶¶ 3–4).  But the officer with whom she spoke did not believe her.  (*Id.* at 3 ¶ 6).  As required by the forfeiture statute, on March 4, 2019—twelve days after the seizure of Ms. Sutton's car—Leesburg asked the State to institute a civil forfeiture proceeding against the car.  (Doc. 21-2 at 6).  The State did so on March 6, 2019, fourteen days after the seizure.  (*Id.* at 2–6).

Alabama's civil forfeiture statute provides for the forfeiture of vehicles used "to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" controlled substances.  Ala. Code § 20-2-93(a)(5).  Once a civil forfeiture proceeding has begun, the property is "not . . . subject to replevin," Ala. Code § 20-2-93(d), a common law action for the return of goods wrongfully taken.  At that point, the only way a civil forfeiture defendant may obtain her property during the pendency of the proceeding is by "execut[ing] a bond in double the value of such property."  *Id.* § 20-2-93(h), *incorporating by reference id.* § 28-4-287; *State v. Two White Hook Wreckers*, __ So. 3d __, 2020 WL 7326386, at *2 (Ala. Dec. 11, 2020) (holding that the double-value bond "is the exclusive method

by which a claimant may obtain seized personal property during the pendency of a forfeiture action").

To prevail in a civil forfeiture proceeding for "any type of property other than real property and fixtures," a property owner bears the burden of proving "both that the act or omission subjecting the property to forfeiture was committed or omitted without the owner's or lienholder's knowledge or consent and that the owner or lienholder could not have obtained by the exercise of reasonable diligence knowledge of the intended illegal use of the property so as to have prevented such use." Ala. Code § 20-2-93(h).

Although Ms. Sutton was served with the civil forfeiture complaint in March 2019 (doc. 28-1 at 18), she did not appear, so the state court entered a default declaratory judgement forfeiting the car to Leesburg (*id.* at 45). On the day the court entered judgment, Ms. Sutton appeared in the case and moved to set the default judgment aside. (*Id.* at 47–48). On June 25, 2019, the state court granted the motion and set aside the default judgment. (*Id.* at 171).

In July 2019, Ms. Sutton served interrogatories and requests for production on the State. (Doc. 28-1 at 186–94). In an undated response, the State objected to some requests and promised "forthcoming" responses to others. (Doc. 21-5 at 2). The state court docket reflects no other activity until February 2020, when the court set the case for a trial to take place in April 2020. (Doc. 28-1 at 236). Several days

before the trial was to start, Ms. Sutton moved for summary judgment. (*Id.* at 238–39). On May 28, 2020, the state court granted Ms. Sutton's motion for summary judgment. (*Id.* at 386). The court found that, although the State had established a *prima facie* case that the car was used as a conveyance for a controlled substance, Ms. Sutton had proved that she did not know and could not have learned of the intended unlawful use of the car. (*Id.*). The court therefore denied the State's request for forfeiture and ordered the release of the car to Ms. Sutton. (*Id.*).

## II.    PROCEDURAL HISTORY

Ms. Sutton filed this action against Leesburg in January 2020. (Doc. 1). Ten months later, she filed a belated notice under Federal Rule of Civil Procedure 5.1 and 28 U.S.C. § 2403 that this action questions the constitutionality of a state statute. (Doc. 24). After the court certified to the Attorney General that this action raises a constitutional challenge to the civil forfeiture statute, the State, without waiving its sovereign immunity, moved to intervene for the limited purpose of defending the constitutionality of its civil forfeiture statute. (Doc. 26). This court granted the motion and the State filed a motion to dismiss the complaint. (Docs. 27, 28). Leesburg then followed with a motion for judgment on the pleadings. (Doc. 31). The court granted in part and denied in part the State's motion to dismiss and Leesburg's motion for judgment on the pleadings. (Doc. 39). After rejecting various non-merits arguments made by the State and Leesburg, the court determined that the

only claim on which Ms. Sutton could proceed was her claim that the lack of a prompt post-seizure probable cause hearing about the retention of property violates the Fourteenth Amendment's Due Process Clause. (*Id.* at 30–32, 34–35). The court found that the court must use the balancing test for procedural due process claims set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976), instead of the balancing test for speedy trial claims set out in *Barker v. Wingo*, 407 U.S. 514 (1972). (*Id.* at 30–31). But because the State's briefing did not adequately address the *Mathews* test, the court could not evaluate whether Ms. Sutton stated a claim that would survive under *Mathews*. (*Id.* at 32). The court dismissed all of Ms. Sutton's other claims with prejudice, but permitted the procedural due process claim to proceed. (Doc. 40).

The State then moved for reconsideration, arguing that Eleventh Circuit precedent required use of the *Barker* speedy trial test. (Doc. 43). Because that argument was available when the State filed its motion to dismiss, but the State's brief made only a passing argument to it, the court declined to reconsider its ruling. (Doc. 44). The court expressly noted that the parties could take up that legal issue later.[1] (*Id.* at 5). They have done so in these cross-motions for summary judgment.

---

[1] The court notes Ms. Sutton's argument that the court's earlier decision to use *Mathews* is law of the case. (Doc. 57 at 10). Law of the case does not apply until issuance of a final judgment. *Vintilla v. United States*, 931 F.2d 1444, 1447 (11th Cir. 1991) ("[A] court's previous rulings may be reconsidered as long as the case remains within the jurisdiction of the district court. Consequently, law of the case applies only where there has been a final judgment.") (quotation marks and citation omitted); *see FDIC v. Stahl*, 89 F.3d 1510, 1514 n.7 (11th Cir. 1996)

### III.   DISCUSSION

In deciding cross-motions for summary judgment, the court must determine whether, accepting the evidence in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Fort Lauderdale Food Not Bombs*, 901 F.3d at 1239.  Because the parties do not dispute any material facts and the resolution of all three cross-motions depend on the same legal question, the court will address them all together.

The decisive question in this case is whether the court applies the *Mathews v. Eldridge* test or the *Barker v. Wingo* test to Ms. Sutton's procedural due process claim.  *Mathews* provides a three-factor balancing test to determine whether a person received procedural due process before the deprivation of a liberty or property interest.  424 U.S. 319, 332–35 (1976); *see, e.g.*, *United States v. Kaley*, 579 F.3d 1246, 1260 (11th Cir. 2009) ("The *Mathews* test . . . is the traditional test employed in order to determine what process is due before a deprivation of property at the hands of the state may be sustained.").  *Barker* provides a four-factor balancing test to determine whether a defendant received a speedy trial.  407 U.S. 514, 530–33 (1972).

---

(concluding that the district court erred by declining to revisit its earlier ruling on a legal standard because "the denial of Defendants' motion to dismiss was not a final judgment, [so] the decision regarding the standard of care was not the law of the case").  Given the more fulsome briefing about the applicability of *Gonzales* present, the court can and must revisit its earlier decision about the correct test to use in this case.

The parties dispute which test applies in this case.  Ms. Sutton contends that, as the court previously found, *Mathews* governs here because she asserts a procedural due process claim based on Leesburg's retention of her car without a prompt post-seizure probable cause hearing.  (Doc. 22; Doc. 23 at 13–26).  Leesburg and the State argue that binding Eleventh Circuit authority requires application of the *Barker* speedy trial test.  (Doc. 47 at 17–22; Doc. 51 at 16–21).  The court agrees with Leesburg and the State.  The Eleventh Circuit's decision in *Gonzales v. Rivkind*, 858 F.2d 657 (11th Cir. 1988), taken together with a precedential opinion in the criminal forfeiture context, mandates use of the *Barker* test.

In *Gonzales*, the government seized cars that were being used to transport illegal aliens.  858 F.3d at 659.  The plaintiffs had the option of doing an interview with an official from the Immigration and Naturalization Service ("INS"), at which they could present evidence about whether their cars were subject to forfeiture, or filing a claim or cost bond that would prompt a judicial forfeiture proceeding.  *Id.* at 658–59.  Instead of doing either, they filed suit in federal court, arguing that due process required a prompt post-seizure judicial hearing on whether probable cause supported the seizures.  *Id.* at 659; *see also Gonzales v. Rivkind*, 629 F. Supp. 236 (M.D. Fla. 1986), reversed by *Gonzales*, 858 F.2d 657.  The district court found that the INS's procedure violated due process and entered an order "requiring the INS to provide a claimant a postseizure probable cause hearing before a judicial officer

within seventy-two hours of the claimant's request for such a hearing." *Gonzales*, 858 F.2d at 659.  The Eleventh Circuit reversed, holding that because the judicial forfeiture proceeding included a probable cause determination, "that procedure, if timely, affords a claimant of seized property all process to which he is constitutionally due." *Id.* at 661.

The *Gonzales* panel relied on two Supreme Court decisions: *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555 (1983) and *United States v. Von Neumann*, 474 U.S. 242, 245 (1986).  In *$8,850*, a plaintiff challenged the government's eighteen-month delay between seizing cash and instituting a civil forfeiture proceeding.  461 U.S. at 556.  The Supreme Court held that the *Barker* speedy trial test "provides the relevant framework for determining whether the delay in filing a forfeiture action was reasonable." *Id.*  In *Von Neumann*, the government seized the plaintiff's newly purchased car when he attempted to enter the United States without declaring the car at the border.  474 U.S. at 245.  The plaintiff, conceding that he had violated customs laws, immediately filed an administrative petition for remission or mitigation,[2] which the agency took thirty-six days to rule on.  *Id.* at 245–46.  The plaintiff filed suit, arguing that "his property interest in his car gives him a constitutional right to a speedy disposition of his

---

[2] "Remission . . . presupposes forfeiture and assumes title in the Government." *Fla. Dealers & Growers Bank v. United States*, 279 F.2d 673, 675–76 (5th Cir. 1960); *see also* 19 U.S.C. § 1618 (the remission or mitigation provision at issue in *Von Neumann*); 18 U.S.C. § 981(d).

remission petition without awaiting a forfeiture proceeding." *Id.* at 249. The Supreme Court disagreed, explaining that "[t]he remission statute simply grants the [agency] the discretion not to pursue a complete forfeiture despite the Government's entitlement to one." *Id.* at 250. Because remission proceedings were not necessary to a forfeiture determination, they were not constitutionally required. *Id.* In reaching that holding, the Supreme Court stated that "[i]mplicit in this Court's discussion of timeliness in *$8,850* was the view that the forfeiture proceeding, without more, provides the postseizure hearing required by due process to protect [the plaintiff]'s property interest in the car." *Id.* at 249.

The *Gonzales* decision explained that *$8,850* and *Von Neumann* stood for the proposition that "the availability of a timely postseizure hearing fulfills the requirements of due process." 858 F.2d at 661. In addition, the Court approvingly cited a Second Circuit case that held "due process did not entitle claimants to [a] probable cause hearing in advance of [the] forfeiture *trial*." *Id.* at 662 (citing *United States v. Banco Cafetero Panama*, 797 F.2d 1154 (2d Cir. 1986)) (emphasis added).

*Gonzales* held that the availability of the judicial forfeiture proceeding, if timely, provides all the post-seizure process that is due to protect a person's interest in property. *Gonzales*, 858 F.2d at 661. And, if a forfeiture proceeding is available, a forfeiture defendant's procedural due process claim must be analyzed under the *Barker* test. *Id.* Ms. Sutton argues that *Gonzales* does not bind the court in this case

10

because *Gonzales* involved a challenge to the seizure of the car, not the post-seizure retention of the car.  (Doc. 54 at 10–11; Doc. 57 at 10–13; Doc. 58 at 27–28).  This distinction is unpersuasive.  Although *Gonzales* addressed the seizure, not the retention, of property, other Eleventh Circuit cases hold that the court must analyze a challenge to the pre-judgment retention of property under *Barker*. *See Kaley*, 579 F.3d at 1252; *United States v. Bissell*, 866 F.2d 1343, 1352 (11th Cir. 1989).

In *Bissell*, criminal defendants challenged the government's pre-trial restraint of their assets, which precluded them from hiring counsel of their choice, on the ground that due process required a hearing at which the government had to "prove the probability that the defendant will be convicted and that his assets will be forfeited."  866 F.2d at 1352.  The Eleventh Circuit, relying on *$8,850*, held that the *Barker* test governed the due process analysis because the defendants "challenge[d] the absence of a hearing between the imposition of restraints on their assets and trial." *Id.* at 1353.  In *Kaley*, the Eleventh Circuit, bound by *Bissell*, again used the *Barker* test in another case involving a pre-trial restraint of assets.  *Kaley*, 579 F.3d at 1260.

Taken together, *Gonzales* and *Bissell* require this court to use the *Barker* test to analyze Ms. Sutton's due process claim.  Under *Barker*, the court must weigh "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of [her] speedy trial right, and (4) actual prejudice to the defendant." *United States*

*v. Oliva*, 909 F.3d 1292, 1298 (11th Cir. 2018).  The first factor, length of the delay, "must first be satisfied for the court to analyze the other factors."  *Id.*

Despite the abundant briefing in this case and this court's express invitation to address the applicability of the *Barker* test, Ms. Sutton's briefs do not present any argument that she can prevail under the *Barker* test.  (*See* Doc. 54 at 3–5, 10; Doc. 57 at 10–24; Doc. 58 at 10–31).  She is therefore not entitled to summary judgment on her claim, and the court **WILL DENY** her motion.

The State argues that Ms. Sutton cannot satisfy the *Barker* factors because the State filed the civil forfeiture action within fourteen days of the seizure; any delay in the final judgment was due to Ms. Sutton's own dilatory conduct; Ms. Sutton never asserted her right to a speedy trial; and she suffered no prejudice because she prevailed in the civil forfeiture.  (Doc. 47 at 23–27).  These arguments are persuasive, especially given Ms. Sutton's failure to respond to them.  No reasonable jury could find that Ms. Sutton has sustained her burden of establishing that she was denied a speedy forfeiture proceeding.  Accordingly, the court **WILL GRANT** the State's and Leesburg's motions for summary judgment.

## IV.   CONCLUSION

The court **WILL DENY** Ms. Sutton's motion for summary judgment.  The court **WILL GRANT** Leesburg's and the State's motions for summary judgment.  The court **WILL ENTER** summary judgment in favor of Leesburg and against

Ms. Sutton on her procedural due process claim.

The court will enter a separate order and final judgment consistent with this opinion.

**DONE** and **ORDERED** this September 13, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE